VICTOR C. HOWARD, JUDGE
Lance Waggoner was convicted of unlawful use of a weapon following a jury trial in the Circuit Court of Linn County and was sentenced to four years' imprisonment. This court affirmed his conviction on direct appeal. Waggoner filed a motion for post-conviction relief under Supreme Court Rule 29.15, which the circuit court denied following an evidentiary hearing. Waggoner appeals. We affirm.
Factual Background
In 2011, Waggoner lived in Bucklin with his wife Samantha Waggoner and his eight-year-old stepson. On March 26, 2011, Waggoner's stepson called 9-1-1 and reported hearing gunshots. Waggoner's stepson told the dispatcher that he did not know Waggoner's current location. At 9:40 p.m., Waggoner's wife called Bucklin City Marshal John Wright on his cell phone to ask for help. Wright requested assistance from police officers in Brookfield, and then proceeded toward the home.
Once at the home, officers met Ms. Waggoner and her son at the front door. One of Ms. Waggoner's eyes was red and puffy, and she had a black eye and swollen lip. When the officers went inside, they found broken glass and debris throughout the house. Additionally, officers discovered that a Hummer vehicle had been driven through a closed garage door and away from the home.
Although it was dark outside, an officer discovered the Hummer parked in a field behind the house, about 100 to 200 yards away, with an interior light on. After one of the officers pointed a flashlight at the Hummer, a gunshot was fired from that direction. The officers took cover. When they turned back towards the Hummer, the interior light was off. Officers decided to remove Ms. Waggoner and her son from the scene. They believed that Waggoner *603 was behind the house in or near the Hummer. Because it was dark outside, however, the officers decided to suspend the search for their own safety. None of the officers ever saw Waggoner.
Later, police returned to the scene with Ms. Waggoner to retrieve personal items and search for evidence. Officers found tracks leading from the house to the field and empty rifle and shotgun shells in the field near where they had seen the Hummer. A bullet hole was also discovered in the side of the home.
On April 5, 2011, Waggoner was arrested in Nebraska. He was transported back to Missouri, where he was charged with two counts of unlawful use of a weapon and one count of resisting arrest. Waggoner waived his right to counsel.
On October 7, 2011, a jury trial was held. During the instruction conference, the State agreed to dismiss one of the two charges of unlawful use of a weapon, and the trial court entered a judgment of acquittal on the resisting arrest charge. Accordingly, only a single count of unlawful use of a weapon was submitted to the jury.
The jury returned a guilty verdict on the single count of unlawful use of a weapon submitted to it. The circuit court accepted the jury's recommendation that Waggoner be sentenced to a term of four years' imprisonment. We affirmed Waggoner's conviction and sentence on direct appeal. See State v. Waggoner , 425 S.W.3d 140 (Mo. App. W.D. 2014).
On July 29, 2014, Waggoner filed a timely pro se motion for post-conviction relief under Rule 29.15, which asserted thirty-two separate claims.
Although the circuit court initially dismissed Waggoner's post-conviction relief motion as frivolous, it later reinstated the motion, appointed counsel, and granted counsel an extension of time to file an amended motion. Appointed counsel filed a timely amended motion on December 8, 2014. Following an evidentiary hearing, the circuit court issued its judgment denying Waggoner's post-conviction relief motion on June 29, 2016.
Waggoner appeals.
Standard of Review
We review the denial of a motion for post-conviction relief to determine whether the circuit court's findings of fact or conclusions of law are clearly erroneous. See Rule 29.15(k); Cornelious v. State , 351 S.W.3d 36, 41 (Mo. App. W.D. 2011). "Findings and conclusions are deemed clearly erroneous only if a full review of the record leaves the appellate court with the definite and firm impression that a mistake has been made." Id. (internal quotation omitted). We presume the lower court's ruling to be correct. Id. (citing Strong v. State , 263 S.W.3d 636, 642 (Mo. banc 2008) ).
Discussion
I.
In his first Point, Waggoner argues that the motion court erred when it failed to make a sua sponte inquiry into whether Waggoner was abandoned by his appointed counsel.
Criminal defendants do not have a constitutional right to counsel in post-conviction proceedings. Martinez v. Ryan , 566 U.S. 1, 9, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). Despite the lack of any constitutional right to counsel, Missouri Supreme Court Rules provide for the appointment of counsel for indigent movants in post-conviction cases. See Rule 24.035(e), Rule 29.15(e) ("When ... an indigent movant files a pro se motion, the court shall cause counsel to be appointed for the movant").
Because the right to counsel in post-conviction proceedings is not constitutionally *604 based, any claim that post-conviction counsel was ineffective is "categorically unreviewable." Barton v. State , 486 S.W.3d 332, 336 (Mo. banc 2016) (quoting Price v. State , 422 S.W.3d 292, 297 (Mo. banc 2014) ). Although a movant cannot assert a claim of ineffective assistance by post-conviction counsel, a movant may be entitled to relief if the movant is "abandoned" because of counsel's failure to discharge certain obligations. Id. at 336-37. Rule 29.15(e) requires counsel to:
[A]scertain whether sufficient facts supporting the claims are asserted in the [pro se] motion and whether the movant has included all claims known to the movant as a basis for attacking the judgment and sentence. If the motion does not assert sufficient facts or include all claims ... counsel shall file an amended motion that sufficiently alleges the additional facts and claims. If counsel determines that no amended motion shall be filed, counsel shall file a statement setting out facts demonstrating what actions were taken....
The Missouri Supreme Court has emphasized, however, that
[s]ince first recognized by this Court in Luleff v. State , 807 S.W.2d 495 (Mo. banc 1991), and Sanders v. State , 807 S.W.2d 493 (Mo. banc 1991), the claim of abandonment by post-conviction counsel has been limited to two circumstances-when post-conviction counsel: (1) takes no action with respect to filing an amended motion or (2) is aware of the need to file an amended motion but fails to do so in a timely manner.
Id. at 334 (emphasis in original). Luleff held that, where "there is no record of any activity by counsel on movant's behalf, the motion court shall make inquiry, sua sponte , regarding the performances of both movant and counsel." 807 S.W.2d at 498.
Waggoner does not claim there was no record of activity by counsel. Instead he believes that Luleff required the circuit court to engage in a sua sponte abandonment inquiry in this case, because the amended post-conviction relief motion filed by his appointed counsel made only "minor changes" to his pro se motion, and therefore failed to establish that appointed counsel fulfilled her obligations under Rule 29.15(e). Waggoner attempts to bring his case within the first category of abandonment recognized in Barton : cases where appointed counsel "takes no action with respect to filing an amended motion." 486 S.W.3d at 334. Appointed counsel did take action on Waggoner's behalf, however, since counsel actually filed a timely amended motion for postconviction relief. This simply is not a case in which counsel took "no action with respect to filing an amended motion."
Waggoner argues that the amended motion filed by appointed counsel "is akin to filing no amended motion at all," because of what he considers limited modifications counsel made to his pro se motion. Waggoner cites to our decisions in Pope v. State , 87 S.W.3d 425, 428-29 (Mo. App. W.D. 2002) and Trehan v. State , 835 S.W.2d 427, 429-30 (Mo. App. S.D. 1992) to argue that abandonment must be found where appointed counsel files an amended motion which merely replicates the allegations of a pro se motion with only minor, non-substantive modifications because that is "tantamount to a total default in carrying out the obligations imposed upon appointed counsel under the rules." Id. at 428 (internal quotations omitted).
Our Supreme Court has provided recent guidance. In the present case, as in Barton, appointed counsel filed an amended motion with changes and additions the movant believed were inadequate. Barton clearly states that abandonment will only *605 be found where appointed counsel "takes no action with respect to filing an amended motion," 486 S.W.3d at 334, and Luleff makes clear that an abandonment inquiry is only required where "there is no record of any activity by counsel on movant's behalf." 807 S.W.2d at 498 (emphasis added).
Waggoner provides an exhaustive critique of appointed counsel's performance in what amounts to an impermissible claim for ineffective assistance of post-conviction counsel. His argument would require a circuit court to assess the extent, and significance, of the modifications appointed counsel made to a pro se motion. This sort of qualitative assessment would necessarily-and improperly-require the court to evaluate the effectiveness of post-conviction counsel's efforts on the movant's behalf. Our Supreme Court has emphasized that "the rationale behind the creation of the abandonment doctrine in Luleff and Sanders was not a newfound willingness to police the performance of post-conviction counsel generally." Price v. State , 422 S.W.3d 292, 298 (Mo. banc 2014). The Court has also stressed that "[c]laims of abandonment are reviewed carefully to ensure that the true claim is abandonment and not a substitute for an impermissible claim of ineffective assistance of post-conviction counsel." Barton , 486 S.W.3d at 338.
The Supreme Court has explained the importance of maintaining a clear distinction between claims of abandonment and claims of ineffective assistance. Making this delineation between abandonment and ineffective assistance claims is essential both because it is required by Missouri law and because it clarifies for the federal courts that litigants who received ineffective assistance of post-conviction counsel may not obtain relief in Missouri state courts. Gehrke v. State , 280 S.W.3d 54, 59 (Mo. banc 2009), held that this is important because:
[T]he Court limits the scope of abandonment to preserve potential relief under federal habeas corpus proceedings. Federal habeas corpus proceedings require a movant to exhaust all available state remedies, including appeal and postconviction remedies, before bringing a federal claim. State court remedies are exhausted when they are no longer available, regardless of the reason for their unavailability. If the scope of abandonment were expanded further, it is foreseeable that federal habeas corpus claims could be denied due to a movant's failure to bring a motion to reopen postconviction proceedings. This would frustrate the legitimate goals of a prompt comprehensive review and finality.
(internal quotations and citations omitted).
Waggoner's claim that his appointed counsel did not do enough to revise his pro se postconviction relief motion is "an impermissible claim of ineffective assistance of post-conviction counsel," not a "true claim [of] abandonment." See Barton , 486 S.W.3d at 338. The first category of abandonment claims recognized in Barton is limited to cases of non -action by counsel; it does not apply in cases of purportedly insufficient or incompetent action.
The record in this case reflects actions by Waggoner's appointed counsel in furtherance of counsel's obligations under the rules. Counsel made multiple substantive revisions to Waggoner's pro se motion. For example, counsel corrected the date listed in the pro se motion for issuance of this Court's mandate in Waggoner's direct appeal, and added the docket number for Waggoner's direct appeal to the motion. Under Rule 29.15(b), the date of the issuance of the direct-appeal mandate is critical to determining the timeliness of a pro se motion. In this case, Waggoner's pro se *606 motion would have been deemed untimely under the incorrect date he initially provided for the issuance of the mandate in his direct appeal.
Waggoner's appointed counsel also added the following introductory statement prior to the specific description of Waggoner's individual post-conviction relief claims:
8. Claims for Postconviction Relief:
Movant was denied his constitutional rights to due process of law, a fair and impartial jury, and a fair trial, contrary to constitutional guarantees under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under Article I, Sections 10, 18(a) and 22(a) of the Missouri Constitution, because:
Most significantly, counsel in six separate places listed the witnesses upon whom Waggoner would rely to support specific claims. Item #9 of Supreme Court Form 40 requires that a post-conviction relief movant provide "the names and addresses of the witnesses or other evidence upon which you intend to rely to prove [the] facts" supporting the movant's claim. Counsel's insertion of witness names into the pro se motion reflects an effort by counsel to bring Waggoner's pro se motion into compliance with the procedural requirements established by Supreme Court Rules.
Thus, the amended motion filed by appointed counsel in this case was not merely a reproduction of Waggoner's pro se motion. To the contrary, counsel made multiple, substantive modifications to the pro se motion. The amended motion cannot be considered a "mere replication" of Waggoner's pro se motion. Because claims of ineffective assistance by postconviction counsel are "categorically unreviewable," we need not decide whether the modifications counsel made were well-advised, significant, or successful; nor do we consider whether a reasonably competent attorney would have made further revisions to Waggoner's pro se motion. Because of the actions counsel took on Waggoner's behalf, Waggoner was not "abandoned," and there was no need for the circuit court to conduct a sua sponte abandonment inquiry.
Waggoner's first Point is denied.
II.
In his second Point, Waggoner argues that the trial court lacked jurisdiction to convict and sentence him because the crime for which he was ultimately convicted was not charged in the First Amended Information.
In the First Amended Information, Waggoner was charged in Count I with unlawful use of a weapon based on the allegation that, "on or about March 26, 2011, outside the residence at 36417 Nickle Rd., in the County of Linn, State of Missouri, the defendant knowingly discharged a firearm from a motor vehicle, to wit, a yellow Hummer." In Count II, Waggoner was charged with unlawful use of a weapon on the basis that, "on or about March 26, 2011, inside the residence at 36417 Nickle Rd., in the County of Linn, State of Missouri, the defendant knowingly exhibited in the presence of one or more persons a shotgun, a weapon readily capable of lethal use, in an angry or threatening manner."
During the instruction conference, the circuit court required the prosecution to elect between submission of Count I or Count II. The State elected to submit the unlawful use of a weapon charge based on Count II. The verdict director omitted the allegation that the unlawful exhibition of a weapon occurred "inside the residence at 36417 Nickle Rd.," however. And during closing argument, the State argued that the unlawful exhibition of a weapon occurred outside the home, when Waggoner discharged a shotgun in the presence of the law enforcement officers.
*607 On direct appeal, Waggoner challenged the verdict director, arguing that it erroneously omitted the specific location of the offense, as charged in the First Amended Information. We rejected Waggoner's challenge. We first noted that the allegation in Count II of the First Amended Information that the unlawful act occurred "inside the residence at 36417 Nickle Rd." was surplusage, and that it was unnecessary for the State to prove, or for the jury to find, that the offense in fact occurred inside Waggoner's home. We also reasoned that Waggoner's true objection was that there was a factual variance between the crime as charged and the offense proved at trial. We concluded that Waggoner could not show that he was prejudiced by any variance between Count II of the charging instrument and the trial evidence, since in response to Count I he was on notice and prepared to respond to the allegation that he had discharged a weapon in the presence of law enforcement officers outside of his home.
"Matters decided on direct appeal may not be relitigated in a postconviction relief motion." State v. Boyd , 927 S.W.2d 385, 389 n.5 (Mo. App. W.D. 1996) ; see also , e.g. , Placke v. State , 341 S.W.3d 812, 818 (Mo. App. S.D. 2011). Moreover, even if Waggoner's current claim is different from the claim he raised on direct appeal, it is well-established that "[i]ssues that could have been raised on direct appeal-even if constitutional claims-may not be raised in postconviction motions, except where fundamental fairness requires otherwise and only in rare and exceptional circumstances." Esparza v. State , 518 S.W.3d 269, 273 (Mo. App. W.D. 2017) (internal quotation omitted); accord. Strosnider v. State , 514 S.W.3d 34, 40 (Mo. App. S.D. 2016) (quoting State v. Tolliver , 839 S.W.2d 296, 298 (Mo. banc 1992) ).
Waggoner contends that the variance between the First Amended Information and the evidence at trial divested the circuit court of jurisdiction to convict him, and that he is therefore entitled to raise the issue in this post-conviction proceeding. But the Supreme Court has rejected the argument that defects in a charging instrument affect the jurisdiction of the circuit court. More than 25 years ago, the Court explained that
[s]ubject matter jurisdiction of the circuit court and the sufficiency of the information or indictment are two distinct concepts. The blending of those concepts serves only to confuse the issue to be determined. Circuit courts obviously have subject matter jurisdiction to try crimes, including the felony of unlawful use of weapons. Mo. Const. art. V, § 14(a). At the same time, a person cannot be convicted of a crime with which the person was not charged unless it is a lesser included offense of a charged offense. Cases stating that jurisdiction is dependent upon the sufficiency of the indictment or information mix separate questions. That language ... should not be relied on in the future. Equally inaccurate is the statement in at least one case that absence of an information deprives the trial court of jurisdiction over the person.
State v. Parkhurst , 845 S.W.2d 31, 34-35 (Mo. banc 1992) (other citations and footnotes omitted).[1] Waggoner's claim that he *608 was convicted of a different offense than the one charged in the First Amended Information does not raise a "jurisdictional issue" which he can raise in this postconviction relief proceeding.
Point II is denied.
III.
In his third Point, Waggoner argues that his appellate counsel was ineffective for failing to assert that the trial court lacked jurisdiction to convict him, because of the variance between the offense charged in the First Amended Information, and the offense of which he was convicted at trial. Waggoner's Brief acknowledges that appellate counsel argued on direct appeal that "the State argued and submitted Count II on a different theory than what was charged." He contends, however, that appellate counsel should have argued that the disparity between the charging instrument and the evidence at trial created a jurisdictional defect , not merely a trial court error.
As explained in § II, above, Waggoner's contention that the claimed variance divested the circuit court of subject-matter jurisdiction is incorrect. Because this is not a jurisdictional issue, direct-appeal counsel was not ineffective for failing to argue the claim as an issue of subject-matter jurisdiction.
Conclusion
The judgment of the circuit court is affirmed.
Hardwick, J. concurs in majority opinion
Ahuja, J. dissents in separate dissenting opinion

In State v. Collins , 154 S.W.3d 486, 497 (Mo. App. W.D. 2005), we stated that "[a] conviction based on an offense not properly charged in the charging instrument is a nullity, as the trial court acquires no jurisdiction over non-charged offenses." As the Eastern District recognized in Rupert v. State , 250 S.W.3d 442, 447 (Mo. App. E.D. 2008), Collins "fails to acknowledge Parkhurst 's holding," and should not be followed on this point.